UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIM. NO. 05-60018 |
| VERSUS | * | JUDGE MELANCON |
| LYDIA MARIE ASHLEY | * | MAGISTRATE JUDGE HILL |

REPORT AND RECOMMENDATION

The defendant's Motion to Dismiss Indictment for Speedy Trial Act Violation [rec. doc. 43] was referred to the undersigned for Report and Recommendation. [rec. doc. 44]. For the reasons set out below, the undersigned recommends that the motion be **granted in part and denied in part**.

PROCEDURAL HISTORY

The defendant was charged by indictment with fifty counts of aiding and assisting in the preparation and presentation of false tax returns in violation of 26 U.S.C. § 7206(2). [rec. doc. 1]. On April 14, 2005, before her initial appearance before the undersigned, the defendant, *pro se*, filed motions to dismiss the indictment and to dismiss counsel. [rec. doc. 5 and 6].

The defendant first appeared before the undersigned on May 6, 2005. At that time, and in the initial colloquy between the undersigned and the defendant, the undersigned became concerned that the defendant might be suffering from a mental disease or defect rendering her unable to assist counsel in her defense. The undersigned accordingly

informed the defendant that the court was going to order a mental competency examination to determine if the defendant was mentally competent to stand trial. Because the undersigned was concerned that the defendant might be suffering from a mental disease or defect rendering her mentally incompetent to the extent that she was unable to understand the nature and consequences of the proceedings against her and unable to assist properly in her defense, the undersigned declined to arraign the defendant. [rec. doc. 8]. Accordingly, the defendant was not called upon to plead; the defendant has never entered a plea in this case.

The government and the defendant agreed that Dr. Warren Lowe would be appointed as the court's expert to conduct the examination and to thereafter report to the court on his findings. [rec. doc. 14]. Due to various delays, none of which were caused by the defendant, the government or Dr. Lowe, Dr. Lowe's report was not issued until March 8, 2007, and was received by the undersigned sometime thereafter.[1]

On May 2, 2007, the court held a status conference, in Chambers, to determine if either party intended to introduce any evidence, in addition to Dr. Lowe's report, on the mental condition of the defendant. Both parties said they had no intention to introduce

---

[1] The undersigned does not recall the date on which the report was received, but a FAX MEMO which apparently transmitted the report to the undersigned is dated April 26, 2007. Dr. Lowe sent a copy of the report to counsel for the government and counsel for the defendant

At the hearing on this motion, held on September 21, 2007, counsel for the defendant expressly stated that the delay in the examination and the preparation of the report were not a part of this motion to dismiss.

.

any such evidence, and that the court could rule based solely on Dr. Lowe's report.

It was Dr. Lowe's opinion that the defendant suffered from a mental disease best characterized as Schizophrenia, Paranoid Type, chronic. It was further his opinion that her prosecutory delusions interfered with her ability to assist her attorney in her defense. Dr. Lowe further opined that the defendant's delusional thoughts and disorganized thinking were so fixed and intrusive that they interfered with her ability to maintain concentration and consult with her attorney with a reasonable degree of understanding.

Based on these findings, and the decision by the parties to introduce no additional evidence, the undersigned informed the parties that a ruling holding that the defendant was incompetent to stand trial would be issued. The court then inquired of counsel for the government what the government's position was going to be with regard to commitment for treatment pursuant to 18 U.S.C. § 4241(d). Counsel for the government indicated that the government wanted the defendant committed for treatment to see if, after treatment, the defendant could be made competent to assist in her defense.

The court pointed out that Dr. Lowe's opinion, to a reasonable medical certainty, was that the defendant suffered from a serious psychiatric disorder, had been suffering from the disorder for a number of years and was suffering from the disorder at the time of the offense. It therefore seemed reasonable that the defendant would rely on an insanity defense, which, under the circumstances, might well succeed. Given the non-violent nature of the offense, the court asked if the government wanted to re-consider its options.

Counsel for the government said that she wished to do so, and the government was given until May 15, 2007, to notify the court of how it wished to proceed. [rec. doc. 38].

On May 15, 2007, counsel for the government hand-delivered a letter to the undersigned indicating that it wanted the defendant committed for treatment. Later the same day, counsel for the defendant objected, also by faxed letter, to the undesigned. [rec. doc. 45].[2]

On August 22, 2007, the defendant, *pro se*, filed a motion requesting that the court dismiss the Federal Public Defender from representing her for "...trifling with the courts and trifling with court case 05-60018 and causing Defendant Emotional and psychological stress." [rec. doc. 41]. On August 24, 2007, the subject motion to dismiss was filed. [rec. doc. 43]. The government opposed the motion [rec. doc. 50]. A hearing was held on the motion on September 10, 2007 [rec. doc. 51], and counsel were allowed to file post hearing memoranda. [rec. doc. 52 and 54].

On October 11, 2007, while preparing this Report and Recommendation, the undersigned, while reviewing the record herein, realized that the defendant had never entered a plea to the pending indictment. The undersigned immediately convoked a telephone conference with counsel for the parties. Counsel were informed that the defendant had never entered a plea in this case, and were ordered to file supplemental memoranda dealing with the legal significance, if any, of the fact that the defendant had

[2]The status conference was held in Chambers and was not recorded. The above sets out the recollection of the undersigned, and was set out, on the record , at the hearing on the pending motion held on September 10, 2007.

never entered a plea in this case. Both parties complied. [rec. doc. 56 and 57]. This ruling follows.

## LAW AND ANALYSIS

The Speedy Trial Act, codified at 18 U.S.C. §§ 3161, *et. seq.*, provides in pertinent part as follows:

> "In any case *in which a plea of not guilty is entered*, the trial of a defendant charged in an ... indictment with the commission of an offense shall commence within seventy days ... from the date the defendant has appeared before a judicial officer of the court in which such charge is pending ..." (emphasis added) 18 U.S.C. § 3161(c)(1).

Section 3161(h) provides, in pertinent part, that the following periods of delay are excluded in computing the time within which the trial of the defendant must commence:

> "(**A**) delay resulting from any proceeding, including any examinations, to determine the mental capacity or physical capacity of the defendant;"

> \*     \*     \*

> "(**F**) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion;"

Section 3162(a)(2) provides, in pertinent part,

> "If a defendant is not brought to trial within the time limit required by section 3161(c) as extended by section 3161(h), the information or indictment shall be dismissed on motion of the defendant .... In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice."

### 1. The Speedy Trial Act – the effect of no plea being entered

The plain language of § 3161(c)(1) would seem to require that a plea of not guilty be entered before the provisions of the Speedy Trial Act (including the sanctions provisions of § 3162) would apply. In other words, if no plea were entered, the requirement that the defendant be brought to trial within seventy days of her initial appearance in court would not seem to apply. The government, has failed to cite to the Court any jurisprudential authority in support of that position. The defendant concedes that at least two other circuits, under circumstances factually different from those in this case, have held that the provisions of the Speedy Trial Act do not apply when the defendant has not entered a plea of not guilty, despite an appearance before a judicial officer. *See United States v. O'Dell*, 154 F.3d 358, 360-362 (6th Cir. 1998) and *United States v. Tootle*, 65 F.3d 381, 383 (4th Cir. 1995), *cert. denied*, 517 U.S. 1123 (1996). The undersigned has failed to locate any Fifth Circuit precedent on point. Apparently, neither counsel for the government nor counsel for the defendant has been able to locate any Fifth Circuit precedent, either.

Basically, the defendant argues that if the words of § 3161(c)(1) are read literally, the defendant in this case, who has evidenced no intention of pleading guilty, could be held indefinitely without trial. This interpretation, it is argued, plainly subverts the congressional intent evidenced by the enaction of the Speedy Trial Act. The defendant further argues that the 1979 amendment to the Act, simply combined the requirement that

the defendant be arraigned within 10 days of the initial appearance before a judicial officer and be tried within 60 days from that arraignment, to the 70 day period currently found in the Act.  The defendant argues that this amendment was never intended to allow a defendant to be held indefinitely when no plea is entered.  The defendant's argument is not without merit.  Certainly, as was recognized in Judge Motz's concurring opinion in *Tootle*, a contrary interpretation "virtually invites abuse." 65 F.3d at 384.

Nevertheless, given the plain language in § 3161(c)(1) and the precedent from the Fourth and Sixth Circuits, the reasoning of which the undersigned finds persuasive, the undersigned finds that the Speedy Trial Act does not apply to the facts of this case because the defendant never entered a plea to any count of the indictment pending against her.

However, that does not end the inquiry.

**2. The Speedy Trial Act Plan – Western District of Louisiana**

As a part of the Speedy Trial Act, the Congress enacted §§ 3165 and 3166.  These sections required each district to prepare, and file with the Circuit Court, a Speedy Trial Act Plan for the disposition of criminal cases in accordance with the Speedy Trial Act.  The Speedy Trial Act Plan for the Western District of Louisiana (the "Plan") was adopted May 7, 1980 and filed with the Fifth Circuit on May 12, 1980.  The provisions of the Plan differs from the provisions of the Speedy Trial Act in one highly significant, for the purposes of this case, way.

Section II, paragraph 4(a)(3) of the Plan (entitled "Time Within Which Trial Must Commence") provides in pertinent part as follows:

> "(a) <u>Time Limits.</u>  The trial of a defendant shall commence not later than 70 days after the last to occur of the following dates:
>
> \*     \*     \*
>
> (3) The date of the defendant's first appearance before a judicial officer of this district."

Simply stated, the Plan does *not* require that a defendant enter a plea to begin the running of the Speedy Trial Act clock under the Plan.  The reason why the Plan omits the requirement of a plea being entered in order to begin the running of the Speedy Trial Act clock appears clear.  The Plan was adopted in May 1980, *after* the Congressional amendments to the Speedy Trial Act were adopted in 1979.  The 1979 amendments consolidated the requirements of arraignment within 10 days of initial appearance and trial within 60 days of arraignment to a single 70 day period.  The Plan adopted the 70 day requirement, but did not include the requirement of a plea being entered in order to start the Speedy Trial Act clock running.

Section II, paragraph 10 of the Plan provides for sanctions in the event of a violation of the Plan.  That paragraph provides, in pertinent part, as follows:

> "(a)  <u>Dismissal or Release from Custody</u>.  Failure to comply with the requirements of Title I of the Speedy Trial Act may entitle the defendant to dismissal of the charges against him or to release from pretrial custody.  Nothing in this plan shall be construed to require that a case

> be dismissed ... in circumstances in which such action would not be required by 18 U.S.C. §§ 3162 and 3164.

It is clear to the undersigned that the provisions of the Plan apply to the defendant herein, while it appears that the provisions of the Speedy Trial Act do not. Thus, the initial inquiry becomes whether or not the defendant gets the benefit of the Plan provisions which *do not* require the entry of a plea to begin the running of the speedy trial clock, even though the Speedy Trial Act *does* require the entry of a guilty plea to begin the running of the speedy trial clock.

This Court's Plan was adopted pursuant to Rule 50 (b), Fed. R. Crim. P., as it existed at the time, and 18 U.S.C. § 3165. In *United States v. Bullock*, 551 F.2d 1377 (5th Cir. 1977), the court recognized that a Speedy Trial Act Plan, adopted by the District Court pursuant to the requirements of the Speedy Trial Act, is a binding rule of court, spawned by, but not the same as, the Speedy Trial Act. *Id*. at 1381. Where there is a difference between the Speedy Trial Act, and the district Plan, the district Plan (if its provisions are more strict) applies as a binding rule of court. *Id*. at 1381.

Accordingly, since the Plan does not require the entry of a plea of not guilty to begin the running of the speedy trial clock, the defendant, Ashley, was entitled under the Plan to be tried within 70 days of her initial appearance in court.[3]

---

[3] The Plan provides for the same periods of excludable delay as does the Speedy Trial Act. *See*, section II, paragraph 6 (a).

### 3. Computation of delay

The defendant first appeared before the undersigned on May 6, 2005. [rec. doc. 9]. She had a previously filed a *pro se* motion to dismiss on April 7, 2005. [rec. doc. 5]. This *pro se* motion, if "artfully drawn", interrupts the speedy trial clock, and the delay in deciding the motion is excludable. *See, United States v. Stephens*, 489 F.3d 647, 653 (5th Cir. 2007). The Fifth Circuit has made it clear that when a pretrial motion does not require a hearing, no more than 30 days from the date the motion is taken under advisement is excludable, pursuant to the provisions of § 3161(h)(1)(J). *See also, United States v. Calle*, 120 F.3d 43, 45 (5th Cir. 1997).

Here, because the speedy trial clock (under the Plan) did not begin to run until May 6, 2005, and because the motion to dismiss was denied on June 3, 2005 (less than 30 days after the defendant's initial appearance), the period from May 6, 2005 to June 3, 2005 is excludable.[4] Therefore, the speedy trial clock would not have begun to run until June 4, 2005. However, on May 18, 2005, the undersigned appointed Dr. Warren Lowe to serve as the court's expert for the purpose of conducting a psychological examination of the defendant, on an outpatient basis, to determine whether or not the defendant had the mental competency to assist counsel in her defense. [rec. doc. 14]. Accordingly, as of

---

[4] The *pro se* motion to dismiss consisted of a four page motion, including statutory and jurisprudential citations, attachments and a proposed order. This motion was "artfully drawn", and therefore the delay in deciding the motion is excludable. *See Stephens, supra.*, and *United States v. Clark,* 807 F.2d 412, 414, n. 3 (5th Cir. 1986). This motion was filed before the court ordered evaluation by Dr. Lowe was performed.

May 18, 2005, no time had expired under the Speedy Trial Act or the Plan.[5]

The defendant concedes that the period of time between the date that Dr. Lowe was appointed (May 18, 2005) and the date that his report was submitted to the court (April 26, 2007) is excludable. On May 2, 2007 counsel for the parties met with the court, in chambers, to discuss how the parties wished to proceed. Both parties agreed that the issue of the defendant's competency to assist counsel would be decided by the court based on Dr. Lowe's report, only; neither side wished to produce any additional evidence.

According, it was clear that the evidence plainly showed that the defendant was unable to assist counsel in her own defense. At that point, the court asked counsel for the government whether or not the government wished to have the defendant committed for treatment in an attempt to make the defendant competent to stand trial. Counsel for the government indicated to the court that the government wanted the defendant committed for treatment. The court strongly urged the government to reconsider that opinion, in light of Dr. Lowe's report indicating the strong likelihood that the defendant was unlikely to be made competent to assist counsel through additional treatment, and further, that the defendant lacked the mental capacity, at the time of the alleged offense, to be found guilty.

---

[5] The defendant argues that since the motion to dismiss was filed on April 27, 2005, that the excludable delay ended 30 days thereafter, on May 27, 2005. [rec. doc. 43-2, page 5]. That argument ignores the fact that the speedy trial clock *could not begin* to run until May 6, 2005, the date of the defendant's initial appearance. Obviously, the speedy trial clock cannot run until it begins, and it did not begin until May 6. Since the motion to dismiss was denied less than 30 days from that date, no speedy trial time expired.

Counsel for the government indicated that to she would consider the court's position. The court gave the Government until May 15 to notify the court of whether or not it intended to proceed with the commitment of the defendant for mental health treatment, or would rather file a motion to dismiss. On May 15, 2007, the government notified the Court, by letter, that it wanted the defendant committed to a federal facility for additional treatment. By letter transmitted to the undersigned the same day by facsimile, the defendant objected. [rec. doc. 45].

On June 11, 2007 a motion to substitute counsel for the defendant was filed, which motion was granted June 12. [rec. doc. 39 and 40]. On August 22, 2007 the defendant, *pro se*, filed a motion seeking to have her counsel removed. [rec. doc. 42]. On August 24, 2007, counsel for the defendant filed this motion to dismiss. [rec. doc. 43]. The motion to dismiss was heard on September 10, 2007, and additional briefs were ordered. [rec. doc. 51]. The final briefs were filed by the defendant and by the government on November 2, 2007. [rec. doc. 56 and 57].

It appears clear that all of the time between the defendant's initial appearance before the undersigned and the receipt of Dr. Lowe's report is excludable. When Dr. Lowe's report was received and provided to counsel, the defendant's mental competency was not yet "under advisement", because the undersigned did not know whether or not either party would attempt to introduce any additional evidence on that issue. It was not until the undersigned learned, at the status conference on May 2, that the parties did not

intend to introduce additional evidence on the defendant's competency that the issue of her competency to assist counsel was ripe for decision. Thus, as of May 2, the undersigned had the issue of the defendant's competency to assist counsel "under advisement".

The government argues that its letter of May 15, 2007 constitutes a "motion" sufficient to interrupt the running of the speedy trial clock. The court does not have to decide that issue. Even assuming, for the sake of this discussion, that the government is correct, the outcome is not changed. If the Court construes the government's letter of May 15, 2007 as a "motion" only 30 days from that date (or until June 14) is excludable.

Accordingly, The undersigned makes the following calculations pursuant to the Plan:

| DATES | EXCLUDED/NON-EXCLUDED | SPEEDY TRIAL DAYS |
|---|---|---|
| 5/6/2005-4/26/2007 | EXCLUDED | 0 |
| 4/26/2007-5/1/2007 | NOT EXCLUDED | 5 |
| 5/2/2007-6/14/2007 | EXCLUDED | 0 |
| 6/15/2007-8/23/2007 | NOT EXCLUDED | 70 |
| | TOTAL NON-EXCLUDED DAYS | 75[6] |

---

[6] The defendant filed a *pro se* motion to dismiss counsel on August 22, 2007. Even if the Court were to find that motion to be "artfully drawn" the exclusion of two additional days does not affect the outcome. The undersigned, however, simply cannot construe a *pro se* motion drafted by a litigant who is clearly incompetent to assist counsel as "artfully drawn". While a similar argument could be made with regard to the first pro se motion to dismiss filed by the defendant, at that time Dr. Lowe had not yet examined the defendant and no report of the defendant's mental competency was available.

As can be seen from the above, 75 non-excludable days under the Plan have run in this case and the defendant has not been brought to trial. Both the Speedy Trial Act and the Plan requires the defendant to be brought to trial within 70 days. That 70 day period was violated in this case. Accordingly, the undersigned recommends that the indictment in this case be dismissed.[7]

**4. Dismissal without prejudice**

Section 3162(a)(2) provides that when the defendant is not brought to trial within the time limits required, that the court should consider, among others, each of the following factors in determining whether the dismissal should be with, or without, prejudice: (1) the seriousness of the offense; (2) the facts and circumstances of the case which led to the dismissal; and (3) the impact of a reprosecution on the administration of the Speedy Trial Act and on the administration of justice.

Without going into a detailed analysis of these three factors, suffice it to say that dismissal with prejudice is neither required, nor warranted, under the facts of this case. There is simply no reason in this record which would warrant that harsh remedy. Accordingly, the undersigned recommends that the indictment be dismissed without prejudice.

---

[7] The undersigned is fully aware that the Plan does not *require*, as a sanction for violation, dismissal of the indictment. However, there is no question in my mind that the defendant's right to a speedy trial under the Plan was violated. A right without a remedy is hollow indeed. Since the undersigned is recommending that the indictment be dismissed without prejudice, the government can, if it wishes, reindict the defendant. The government is not, therefore, seriously prejudiced by this dismissal.

For the above reasons, the undersigned **recommends** that the indictment against the defendant, Lydia Marie Ashley, be **dismissed without prejudice**.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within ten (10) days after being served with a copy of any objections or response to the District Judge at the time of filing. objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).**

November 30, 2007, Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE